■ In the Matter of the Claim of MANUEL CLARA, Respondent, against HARTSDALE COAL COMPANY et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— This is an appeal by the employer and its insurance carrier from decisions made by the Workmen's Compensation Board on Novem-

ber 14, 1955, April 19, 1956 and November 27, 1956, wherein a divided board rescinded a determination of the Referee allowing the claimant an award for 100% schedule loss of use of his right leg and found instead, that the claimant was entitled to an award for permanent total disability from December 18, 1945 to April 4, 1956, with payments to continue. On June 27, 1944 claimant was struck on the right foot with a coal shovel. The injury was described by the attending physician as " traumatic synovitis — injuries to muscles and ligaments — anterior right foot." This injury resulted in lost time between July 10 and July 17, 1944. Claimant continued working and there is no record of any further medical care for the right foot during 1944. On February 10, 1945, his attending physician removed the toenail on his right great toe in an attempt to relieve pain and swelling. The healing process was interfered with by Buerger's disease. Although claimant had denied any injury to the right great toe on two occasions, later on his statement that his toe was struck, a schedule award was made for 50% loss of right great toe against the carrier on the risk on June 27, 1944 and this case was closed. Except as a history, this accident has no bearing on the issue involved herein. Although he continued to have difficulty with the right foot, he returned to work. On December 17, 1945 his right foot became frostbitten while at work. He was discharged from a period of hospitalization in January, 1946 still suffering from an ulcer on the right great toe. He never returned to work after the frostbite accident. In October, 1946 the toe was amputated but the wound failed to heal. Between February, 1947 and October, 1947 he underwent a series of operations which culminated in the amputation of his right leg at mid calf. Prior thereto a pedicle flap was raised on the left leg in connection with a skin graft. Pain and discoloration subsequently developed in the left foot, which required hospitalization in October, 1948. In May, 1949 the lower part of the left leg was amputated. The issue concerning the causal relationship of the left leg amputation to the claimant's accident was referred to an impartial specialist in vascular disease who reported that the loss of the left leg was not related to the pedicle flap operations or to the December, 1945 frostbite accident. In May, 1954 the board rendered a decision from which no appeal was taken that the loss of the left leg was not related to claimant's employment. In its memorandum decision of November 14, 1955 rescinding the determination of the Referee that the claimant be awarded 70 weeks' protracted temporary total disability and a schedule loss of 100% loss of use of the right leg, the divided board merely stated that the claimant had lost both legs, " was not a good subject for an artificial limb and that further operation due to exostosis [a bony outgrowth] would be necessary ". In the findings prepared by the Attorney-General's office it was stated that the frostbite accident " aggravated " the pre-existing Buerger's disease resulting in the right leg amputation and that claimant is unable to wear artificial limbs. Nowhere in the record are we able to find any medical proof in support of the finding that the Buerger's disease was aggravated or activated by the frostbite accident. Dr. Haines, upon whose testimony the board relies, could not say whether trauma or frostbite aggravated the disease: " Q. Let's go to the accident of 1945, where this man had a frozen right foot. What, if anything did that do, superimposed upon the underlying Buerger's disease? A. As I understand it, you are asking me did the accident which consisted of frostbite have anything to do with the Buerger's disease? Q. Did it aggravate it? Did it accelerate it? Did it in any way interfere with the disease at all by making it any worse? A. I don't know whether it did or not. I couldn't say." Since there is no substantial evidence that the frostbite accident, aggravated or accelerated or hastened the progress of the

disease there must be a reversal and a remittance. And even assuming that there was substantial evidence relating the condition of the right leg to the frostbite accident, there is lacking any factual proof to support Dr. Haines conclusion that the condition of the right leg between 1948 and 1955 caused a continuing total disability. Indeed, the evidence is to the contrary. The right stump was reported healed in April, 1948 by a board medical examiner. In September of 1948, it was reported that claimant was wearing an artificial leg. In October, 1948 the left foot pathology began, but there is no mention of treatment for the right stump until February, 1951, when both stumps were re-amputated because of ulcers due to exostosis. Admittedly claimant has been totally disabled since the amputation of the left leg in May, 1949. We must keep in clear focus however, the real issue which is, what is the extent of the disability caused by the condition of the right leg after February, 1948. That exostosis developed on the right leg stump and will continue to do so, does not prove a total and continuing disability due to the condition of the right leg for the periods when the exostoses are growing. They do not develop over night but take considerable time. The record is almost silent as to the condition of the right stump between February, 1948 and February, 1951 and from the 1951 revision of the stump on the right leg to the date of Dr. Haines' testimony in 1955. The case mainly relied upon by the board is distinguishable. In *Matter of Cartenuto v. McConnell & Co.* (254 App. Div. 612) claimant sustained extensive injuries to his foot and had a pre-existing osteomyelitis. After eight years he was, as the court found, confined to his bed. There the injury acting together with a disease caused a prolonged, actual disability. Here, there is no proof, since the board rejected causal relationship of the left leg, that the condition of the right stump between revisions of it was disabling except for the fact that he was not a good subject for an artificial leg and, of course, he had little occasion to use one while confined for his left leg. Therefore, we conclude that there was no substantial evidence that the frostbite accident was related to the ensuing condition of the right leg and further that there is no substantial evidence that there is a permanent and total disability due to the condition of the right leg. Decisions and award reversed and the case remitted, with costs to the appellants against the Workmen's Compensation Board. Present — Foster, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.